# SUPREME JUDICIAL COURT

#### FOR THE

## COUNTY OF NORFOLK, OCTOBER TERM 1839, AT DEDHAM.

#### PRESENT:

Hon. LEMUEL SHAW, Chief Justice,
Hon. SAMUEL PUTNAM,
Hon. SAMUEL S. WILDE, } Justices.
Hon. MARCUS MORTON,

---

## George W. Cousins, Petitioner, *versus* Hervey B. Cowing.

A person employed as first officer and pilot on board a steamer plying daily between two ports about twelve miles distant from each other, and whose duty it was to take the mail to and from the steamer and the post office, was *held* not to be exempted, either as a mariner, a ferryman, or by reason of his so taking the mail, from liability to perform duty in the militia.

Where a company in the militia being without any commissioned officers, the selectmen of the town were called upon to make out a roll of the company and they prepared one containing the names of some persons not liable to be enrolled, it was. *held*, that this error did not vitiate the roll in respect to persons whose names were rightfully placed upon it.

So an order for warning a company, containing the names of some persons not liable to perform duty in the militia, is nevertheless valid in respect to those named in it who are liable.

A party fined by a justice of the peace for neglect of duty in the militia, cannot, on a petition for *certiorari*, take advantage of an objection which was not made at the trial before the justice, and which, if it had been then made, might perhaps have been obviated by proof.

In the case of a complaint against a soldier in the militia for neglect of duty, tried before a justice of the peace, the judgment of the justice on the sufficiency of the evidence to support the complaint is not subject to revision by this Court.

This was a petition for a *certiorari* to David Holbrook, a justice of the peace, by whom the petitioner had been fined for

neglecting to appear at a meeting of a company of militia in the town of Cohasset, on the first Tuesday of May, 1838, for inspection of arms.

The petitioner produced a copy of the record, by which it appeared, that at the trial before the justice, the complainant, Cowing, in order to prove the petitioner duly enrolled, offered in evidence an order, dated June 12th, 1837, from F. A. Kingsbury, the colonel of the regiment, directing the selectmen of Cohasset to cause to be made " a true and perfect roll of every able bodied white citizen resident in said town, although temporarily absent, who is liable to perform duty in the militia, comprising as well absolute as conditional exempts, excepting only idiots," &c.; and also the list of names or roll returned by the selectmen in pursuance of the order. On this roll were the names of many persons who were not liable to do military duty. The complainant also exhibited another roll, which purported to have been made and corrected by himself on the day appointed for the inspection, but which nearly conformed to the roll furnished by the selectmen. Each of these rolls contained the name of the petitioner. This evidence was objected to by the petitioner, but was allowed by the justice as sufficient evidence of the petitioner's enrolment.

To prove that the petitioner was duly warned, the complainant offered a company order, dated April 4th, 1838, and signed by the complainant as captain or commanding officer, directing a certain private in the company to warn certain persons therein named, including the petitioner. The complainant testified that the persons named in the order were on the roll returned by the selectmen, and that some of them were not liable to do military duty. This order, though objected to by the petitioner on the ground that the complainant was not authorized to issue it, and that it was founded on the enrolment above mentioned, was admitted by the justice. It was then proved that the petitioner was warned to appear, in compliance with the order, on the day of inspection of arms, and that he was absent on that day from the ranks of the company.

To show the authority of the complainant to issue the order, it was proved that he was detailed by the colonel of the regiment, on the 2d of April, 1838, to command the company.

Cousins
v.
Cowing.

To show that the colonel had a right to detail an officer to command the company, the complainant proved a regimental order, dated the 3d of December, 1836, ordering W. E. Doane, a private, to give notice to all the privates duly en-rolled in the company, a list thereof being on the back of the order, to meet on the 31st of December, for the purpose of electing a captain, lieutenant and ensign, the company being without any commissioned officers, and proved the delivery of the order to Doane. And it was proved that Doane, on the 31st of December, redelivered the order to lieutenant colonel Curtis, a field officer of the regiment, who had been detailed to preside at the election, together with a return of his doings therein. The complainant then offered to prove the contents of the return by parol; which being objected to as not the best evidence the nature of the case permitted, it was proved that the return had been lost or mislaid and could not be found upon diligent search therefor, and thereupon evidence of the contents of the return was admitted. It was then proved by parol, that Doane's return showed that he had warned all the persons named in the order, who were liable to do military duty and could be found, and that they were named in the return.

In order to prove that an election of officers had been held agreeably to the regimental order of the 3d of December, it was proved that a record of the several ballotings was kept by the presiding officer and that it had been lost or mislaid and could not be found upon diligent search; and parol evidence was then admitted to show that an election of officers was held on the 31st of December, Curtis presiding, and again, by ad-journment, on the 3d of January, Curtis presiding, and again, by adjournment, on the 5th of January, Kingsbury presiding; that there were on those days, a great number of ballotings, which either resulted in no choice, or in the election of persons who declined, until at last three persons were chosen to the sev-eral offices of captain, lieutenant and ensign, who upon inquiry were found to be absent, at sea, so that notice of their election could not be given to them ; and that many of the privates de-clared that they did not intend to elect any person to office who would or could accept the same ; that thereupon the meeting was dissolved, and a return was made by the presiding officer,

of the election of the three persons to the several offices of captain, lieutenant and ensign, and in the return it was stated that each of those persons was absent at sea, and that the company did not intend to elect any one who would or could accept a commission. And it appeared that this return was sent back to the colonel, by the adjutant general of the Commonwealth, suggesting the propriety of leaving a written notice at the dwellinghouses of the persons elected; which was not done, for the reason that it was supposed that the company had already virtually refused or neglected to elect any officer.

On behalf of the petitioner it was proved, that he had been for two years last past attached to a steamer which was employed in running between Hingham and Boston, (a distance of about twelve miles;) that the United States mail between Duxbury and Boston, was conveyed daily in that steamer, during the portion of the year in which the steamer usually runs, and it was the peculiar duty of the petitioner to take charge of the mail and convey it to and from the steamer and the post offices at Hingham and Boston; and that the steamer was constantly running between Hingham and Boston after the 16th of March, 1838, until and after the 1st Tuesday of May, and that the petitioner was required to be and was on board all the time, except when making short occasional visits to his family, in Cohasset. It also appeared, that the petitioner was first officer and pilot of the steamer.

Upon the foregoing evidence the petitioner contended,

1. That he was not liable to perform military duty at all.

2. That he was not legally enrolled in the company.

3. That if legally enrolled, the order for his appearance at the inspection was illegal.

4. That the justice had admitted insufficient and illegal evidence in support of the complaint.

These objections were overruled and judgment was rendered against the petitioner.

The petition alleged that the proceedings before the justice were erroneous, on the ground of these same objections; and it contained the further objections, that it was not shown that the petitioner had received six months' notice of his enrolment, and that the complaint could not be legally sustained by the evidence exhibited.

*Greenough* argued in support of the petition.

MORTON J. afterward drew up the opinion of the Court. Several exceptions have been taken to the proceedings of the magistrate ; one only of which goes to the merits of the case ; the rest relating to matters of form. We will examine them, in the order in which the petitioner has arranged them.

1. The petitioner contends that he is not liable to perform military duty. Being "an able bodied white male citizen" of the age of eighteen and under the age of forty-five," the burden is upon him to show exemption. The only ground upon which he founds his claim to be exempt, is, that he was employed as first officer and pilot on board the steamer General Lincoln, which then plied between Boston and Hingham, and carried the mail. It is not pretended that he was a mariner within the meaning of the United States militia law. *Commonwealth* v. *Newcomb,* 14 Mass. R. 394. Nor was he "a post officer," "a stage driver," or "a post rider." He must therefore claim to be "a ferryman employed at a ferry on the post road." "A ferry" and "a ferryman," are terms of definite and fixed meaning and well understood, not only in legal language, but in common parlance. To denominate the passage across the bay between Boston and Hingham "a ferry," the steamer running there a ferry boat, and those employed on board of her "ferrymen," is not much if any less absurd than to call the Atlantic ocean between England and America "a ferry," the great steamers there navigated "ferry boats," and the men employed on board of them "ferrymen." By the Revised Stat. *c.* 26, § 1 and 6, ferries must be authorized, and ferrymen licensed, by the county commissioners ; and there can be neither in this Commonwealth without their authority. There are very few if any men in the community, who could not establish as good a claim to be exempt from military duty as the petitioner.

2. The next exception is to the enrolment. This embraces all the ground mainly relied upon by the petitioner. His name was borne on two lists or rolls, the one made by the selectmen of the town in which he resided, the other by the officer detailed to command the company. The petitioner contends, that neither the selectmen nor the officer had any authority to

make a roll, and if they had that they did not exercise it lawfully.

To make a roll of a militia company is not one of the ordinary duties of selectmen. If they possessed the power, it was given them by some special provision of law and grew out of some extraordinary contingency. By the Revised Stat. c. 12, § 7, it is enacted, that " when it shall appear to the commanding officer of a regiment, that any company, within his command, is without a commissioned officer" or a clerk, he "shall require, in writing, the selectmen of the town in which such company is situated, to make out and return to him, within ten days, a list of the names of all the persons " liable to be enrolled in such company.

The evidence introduced at the trial, if competent, shows that this company had neither commissioned officers nor clerk. The company were ordered, in a manner to which no exception has been taken, to meet for the election of officers, on the 31st of December, 1836. The meeting was adjourned several times, and many ballotings were had, which finally resulted in the choice of three company officers. Whether this election was legal or not, or whether these officers were entitled to their commissions or not, we shall not stop to inquire. Because it is enough for this case, that they had not accepted, or been commissioned or been qualified. There clearly were no commissioned officers of the company, and therefore the contingency had happened which authorized the colonel of the regiment to call upon the selectmen to make and return to him a roll of the company. An order was accordingly issued, which conforms substantially, if not literally, with the statute of 1837, c. 240, § 1. The selectmen, in conformity to the requisitions of this order, did made and return a list or roll of those liable to be enrolled in the company. If the order and return were a little more comprehensive than the statute required, it would not invalidate either. The legality of the enrolment does not depend upon the entire accuracy of the roll. If the petitioner might complain of the omission of persons liable to be enrolled, surely he cannot complain because more were enrolled than were liable. To include exempts might put them to trouble, but could not injure those rightfully enrolled.

The roll thus made and returned by the selectmen was clearly a legal roll for the purposes for which it was made. It bore the petitioner's name.

The Revised Stat. *c.* 12, § 25, provides, that whenever a " company shall neglect or refuse to elect any officer, or no persons elected shall accept, the commanding officer of the regiment shall detail some officer to train and discipline said company " until an officer shall be elected or appointed. If this company had not neglected to elect officers, those elected had not accepted. It therefore became the duty of the colonel to select, in conformity to military usage, an officer to take the command. He accordingly detailed the complainant, who thereby became the commanding officer of the company and was required to keep its records. In the discharge of this duty, he, from the selectmen's return, made a roll, which also contained the name of the petitioner. Both these rolls were legal and valid ; and thus the objection to the enrolment fails.

The complainant, by the same section, was authorized to " prosecute for all fines and forfeitures, in like manner as the clerk might do, by the provisions of the 112th section." This prosecution, therefore, was instituted by the proper person and in the proper manner.

3. The legality of the order for warning the company is called in question, on the ground that the officer detailed was not authorized to issue it. But we have already shown that the enrolment was legal and the detail of the officer legal, and we can discover no objection to the order. It was in the usual form, contained the name of the petitioner, and if it contained the names of others not liable to enrolment or to military duty, it was not the less valid as to those who were liable.

4. It is now objected, that it did not appear upon the trial, that the petitioner had received six months' notice of his enrolment. We will not inquire whether he was entitled to this notice or not ; because this exception was not taken before the justice and therefore is not open to the petitioner. If it had then been taken, *non constat* that the fact would not have been proved   *Arms* v. *A hley*, 4 Pick. 74.

5. The last objection is very general, and is, that incompetent evidence was admitted and that all the evidence was not sufficient to support the complaint. The latter point we cannot revise. Whether the case was proved or not, is a question for the magistrate, in his discretion, to determine. And his judgment upon it is final. If incompetent evidence, being seasonably objected to, was admitted, it may be a good ground for quashing the proceedings. We presume the petitioner refers to the secondary evidence, a great deal of which was introduced on the trial. Parol evidence was admitted to prove the contents of the order for notifying the election on the 31st of December, 1836 ; of the return of the warning officer on the same ; of the records of the several company meetings for election of officers, of the 31st of December, 1836, of the 3d of January, 1837, and of the 5th of January, 1839, and of the returns of the elections made. But in all these instances, it was first proved that the written evidence was lost or destroyed. Now there is no kind of written evidence, whether of private contracts or public records, so high or sacred, that its loss cannot be supplied by secondary, and if necessary, by parol, evidence. On this trial no secondary evidence was admitted till after proof had been introduced of the loss of the primary evidence.

Neither of the petitioner's exceptions is well founded, and his petition must be dismissed.